[Civ. No. 14117. Third Dist. May 3, 1974.]

LAWRENCE JACKSON, Plaintiff and Appellant, v. ROBERT B. CARLESON, as Director, etc., et al., Defendants and Respondents.

**COUNSEL**

Eugene M. Swann, Carmen L. Massey and Gary J. Solberg for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and Richard M. Skinner, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**JANES, J.**—Plaintiff appeals from a judgment denying his petition for a writ of mandate.

Plaintiff applied through his county of residence for aid to the needy disabled ("ATD"). At the times here involved, ATD was one of the "categorical assistance" programs authorized by the Social Security Act (42 U.S.C. former § 1351 et seq.), implemented in California by the Welfare and Institutions Code[1] (former § 13500 et seq.; see, Stats. 1973-1974, ch. 1216, § 55), and jointly funded by the federal and state governments.

---

[1]Hereinafter, all statutory references are to the Welfare and Institutions Code.

The final authority to determine ATD eligibility rested with the state Department of Social Welfare ("DSW"),[2] which exercised that authority through a "medical review team" composed of a physician and a medical social service consultant. (Former § 13555.)

While awaiting the DSW's decision on his application for ATD, plaintiff was found by his county welfare department to be in need of immediate financial assistance and apparently eligible for ATD. Accordingly, the county commenced payments to plaintiff under section 11056, which provides in relevant part as follows: "The county at the time of receiving an application for public assistance shall determine and verify whether the applicant needs immediate assistance. If it is determined that the applicant is eligible for public assistance, and a signed affirmation is on file to this effect, aid shall be granted immediately. If subsequent investigation establishes ineligibility, the cost of such assistance shall be shared by the state and county in accordance with the applicable sharing ratio after federal contributions are deducted."

"Immediate assistance" granted under section 11056 (otherwise known as "presumptive ATD" when paid to ATD applicants) is not itself ATD or any other form of categorical assistance. It is not required by any federal statute or federal regulation. It is emergency assistance granted prior to the final determination of the applicant's eligibility for some form of categorical aid.

The amount of each immediate assistance payment to an ATD applicant is the same amount as he would receive from the ATD program if eligible. (DSW regulations, Eligibility and Assistance Standards ("EAS"), § 40-129.42.) Where an applicant for ATD has been granted immediate assistance and is subsequently found by the DSW to be ineligible for ATD benefits, the federal government does not participate in the cost of the immediate assistance payments given to the applicant. In such event, the entire cost is borne jointly by the state and county. (§ 11056.) If the applicant for ATD has been granted immediate assistance and is subsequently found to be eligible for ATD, the money received as immediate assistance is offset from the first ATD benefits payable retroactively to the beginning date for which aid was authorized. (EAS §§ 40-129.43, 40-129.5.) Immediate assistance payments are terminated, as a matter of course, at the time of the first ATD payment. (See EAS § 40-129.12.)

---

[2]The name of the Department of Social Welfare has been changed to the "Department of Benefit Payments" effective February 1, 1974. (§ 10550; Stats. 1973-1974 ch. 1212 §§ 358, 448; Memorandum, Secretary of Health and Welfare Agency to Director of DSW, dated Jan. 31, 1974.)

Plaintiff has never received ATD. While receiving immediate assistance, he was notified by the county department that the DSW (through its medical review team) had disapproved his application for ATD. Simultaneously, the county informed plaintiff that payments under section 11056 would cease on a date certain about five weeks thereafter. Plaintiff instituted an administrative appeal from the denial of his ATD application by requesting a hearing before the DSW. (§ 10950 et seq.) During the pendency of the administrative appeal, payments of immediate assistance to plaintiff were terminated.[3]

■ Plaintiff filed a class action against the then director of the DSW and against the directors of the welfare departments of the counties where plaintiff and two coparties resided.[4] By his petition, plaintiff sought a writ of mandate commanding those directors to reinstitute and continue payments of immediate assistance to plaintiff and other similarly situated applicants pending hearings and decisions on their administrative appeals from the denial of their ATD applications.

On this appeal from the adverse judgment of the trial court, plaintiff confuses the issue by referring to immediate assistance grants as "regular ATD benefits." We have previously noted that immediate assistance is not ATD. Plaintiff's sole contention is that recipients of immediate assistance (i.e., "presumptive ATD") are entitled to continue to receive such payments pending a decision on their administrative appeals from the denial of their applications for ATD.

In support of his contention, plaintiff relies solely upon *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], and *Yee-Litt* v. *Richardson* (N.D.Cal. 1973) 353 F.Supp. 996, affd. without opinion sub nom. *Carleson* v. *Yee-Litt* (1973) 412 U.S. 924 [37 L.Ed.2d 152, 93 S.Ct. 2753]. Such reliance is unavailing.

In *Goldberg* v. *Kelly,* where welfare recipients were held entitled to an evidentiary hearing on disputed factual issues before termination of benefits, the benefits involved were AFDC (aid to families with dependent children) categorical assistance payments or state-financed relief to which

---

[3]When the medical review team determines that an applicant has not established his eligibility for ATD, payments of immediate assistance to him are terminated as a matter of course. Such termination is apparently based on EAS section 40-129.5, which provides in relevant part: "Upon completing the determination of eligibility, the county shall . . . deny continuing aid. . . ."

[4]The coparties were named individuals who appeared as plaintiffs in the class action but did not appeal.

the recipients had been previously determined to be statutorily entitled. (397 U.S. at pp. 255-256, 262 [25 L.Ed.2d at pp. 292, 295].) Similarly, in *Yee-Litt* v. *Richardson,* the invalidated DSW regulations (now revised) purported to allow—without a hearing on factual issues—the reduction or termination of categorical assistance benefits for which entitlement had theretofore been found. The welfare recipients in *Goldberg* and *Yee-Litt* clearly were threatened with "grievous loss" of a fundamental interest. (See generally, *C. V. C.* v. *Superior Court* (1973) 29 Cal.App.3d 909, 915-916 [106 Cal.Rptr. 123].)[5]

In contrast, immediate assistance payable under section 11056 contemplates (by the very terms of the section) that subsequent investigation may establish ineligibility for aid under a categorical assistance program. The county's determination of ATD eligibility is only preliminary, pending final determination at the state level.

Because of the interim, temporary, and conditional nature of immediate assistance, we are of the view that its payment to an applicant prior to the state's determination of his eligibility for ATD does not create in him a fundamental interest within the ambit of *Goldberg* and *Yee-Litt.* Such an applicant cannot require the state to hold an evidentiary hearing before it denies his *application for ATD.* (See *Fuchs* v. *Los Angeles County Civil Service Com.* (1973) 34 Cal.App.3d 709, 715-716 [110 Cal.Rptr. 311]; *Zobriscky* v. *Los Angeles County* (1972) 28 Cal.App.3d 930 [105 Cal. Rptr. 121]; cf., *Stratton-King* v. *Martin* (1972) 28 Cal.App.3d 686, 690, fn. 2 [104 Cal.Rptr. 916].) Therefore, it would be incongruous if, after the state's denial of ATD, the applicant could nevertheless demand an evidentiary hearing on the same issue of eligibility before payments of immediate assistance could be halted.

■ "All presumptions usually made by an appellate court in considering appeals apply to a proceeding in mandamus. [Citation.] The judgment is presumed to be correct, and the burden is on appellant to show reversible error." (*Cosgrove* v. *County of Sacramento* (1967) 252 Cal.App.2d 45, 50 [59 Cal.Rptr. 919].) As previously stated, plaintiff urges reversal merely on the basis of *Goldberg* and *Yee-Litt.* He has failed to demonstrate that

---

[5]Where the county proposes to discontinue, terminate, suspend, withhold, or reduce categorical assistance which has been previously granted, federal and state regulations require that, with certain exceptions not involving disputed issues of fact, assistance must be continued until administrative review is completed at the county or state level. (45 C.F.R. § 205.10(a)(5)(iii)(a)(1); EAS §§ 22.022.4, 22-023 (10/15/73 rev.); see *Yee-Litt* v. *Richardson, supra,* 353 F.Supp. 996.)

immediate assistance under section 11056 is similar to the benefits at stake in those two cases.

The judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 26, 1974.